**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 26-cv-2956-WJM

IVAN ALVAREZ GONZALEZ,

     Petitioner,

v.

JUAN BALTAZAR, in his official capacity as
Warden of the Denver Contract Detention Facility, *et al*.

     Respondents.

---

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

---

Before the Court is Petitioner Ivan Alvarez Gonzalez's Verified Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2241 ("Petition") (ECF No. 1) and Motion for Temporary Restraining Order and/or Preliminary Injunction ("Motion") (ECF No. 2). Respondents Juan Baltazar, in his official capacity as Warden of the Denver Contract Detention Facility ("DCDF"); George Valdez, in his official capacity as Field Office Director, Denver Field Office, U.S. Immigration and Customs Enforcement ("ICE"); Markwayne Mullin, in his official capacity as Secretary of the Department of Homeland Security ("DHS"); David Venturella,[1] in his official capacity as Acting Director of ICE; and Todd Blanche, in his official capacity as Acting Attorney General of the United States (collectively, "Respondents" or "the Government") filed a cursory response. (ECF No. 12.)

---

[1] The Petition originally named Todd Lyons, for whom the Government appears to have substituted Venturella.

For the following reasons, the Petition is granted.

## I.    BACKGROUND[2]

This case presents an all-too-familiar fact pattern.  Alvarez Gonzales is a native and citizen of Cuba. (ECF No. 1 at ¶ 2.)  He first entered the United States as a Lawful Permanent Resident ("LPR") as a child.  (*Id.*)  Following a criminal conviction, his LPR status was revoked, and he was ordered deported to Cuba on December 4, 1996.  (*Id.*; ECF. No. 2-1 at 7.)

In 2014, ICE detained Alvarez Gonzalez for sixty days to effectuate the 1996 deportation order.  (ECF No. 1 at ¶ 4.)  ICE was unable to remove him, and it released him on an Order of Supervision ("OSUP") on August 29, 2014.  (*Id.*)  In issuing the OSUP, ICE "found that he is neither a danger to the community nor a flight risk."  (*Id.* at ¶ 86; *see id.* at ¶ 30.)  Since then, Alvarez Gonzalez has maintained perfect compliance with the conditions of his release under the OSUP.  (*Id.* at ¶ 4; *see* ECF No. 2-1 at 3.) He lives with his wife, a United States citizen, who has a disability limiting her mobility and thus relies on him for daily functions.  (ECF No. 1 at ¶¶ 8, 31.)

On May 11, 2026, after waiting for him outside of his home in Miramar, Florida, ICE apprehended Alvarez Gonzalez without notice or explanation.  (*Id.* at ¶¶ 4, 31.) Indeed, Alvarez Gonzalez reports that "ICE has not provided [him] with the reason(s) for revoking his OSUP; ICE has not provided [him] an opportunity to contest those unknown reasons."  (ECF No. 2 at 3.)  Alvarez Gonzalez is now detained at the DCDF. (ECF No. 1 at ¶ 5.)

---

[2] All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

In the Petition, Alvarez Gonzalez challenges the legality of his re-detention.  (*Id.* at ¶ 83.)  Among other relief, he asks the Court to issue a writ of habeas corpus requiring Respondents to immediately release him from custody on his own recognizance or under reasonable conditions of supervision.  (*Id.* at 24.)

## II.    LEGAL STANDARD

"Challenges to immigration detention are properly brought directly through habeas."  *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004).  More specifically, 28 U.S.C. § 2241 "confers jurisdiction upon the federal courts to hear [such cases."  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (citing 28 U.S.C. § 2241(c)(3) (authorizing any person to claim in federal court that they are being held "in custody in violation of the Constitution or laws . . . of the United States")).  "The fundamental purpose of a § 2241 habeas proceeding is the same as that of § 2254 habeas and § 2255 proceedings: they are an 'attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.'"  *McIntosh v. U.S. Parole Com'n*, 115 F.3d 809, 811 (10th Cir. 1997) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)).

## III.    ANALYSIS

Alvarez Gonzalez claims that his detention violates the Immigration and Nationality Act ("INA") and its implementing regulations (Count I), his Fifth Amendment Due Process rights (Counts II and III), the Administrative Procedure Act (Count IV), and the *Accardi* doctrine set forth under *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954) (Count VII).[3]  The Court need only reach Alvarez Gonzalez's

---

[3] The Court notes that Alvarez Gonzalez only brings five claims despite the numbering of

claims that his re-detention violates the INA and its regulations and his due process rights in order to resolve the Petition.

## A.    INA Violation

Alvarez Gonzalez contends that his continued detention is "unlawful and fails to follow 8 U.S.C. § 1231(a)(6)."  (ECF No. 1 at ¶ 83.)

In *Zadvydas,* the Supreme Court considered the claims of two noncitizens challenging their continued detention under § 1231(a)(6).  *Zadvydas*, 533 U.S. at 683–86.  Both filed petitions for writs of habeas corpus pursuant to § 2241 after the Government failed to effectuate their removal to their respective home countries or elsewhere.  *Id.* at 684–86.  In this way, "[t]he civil confinement . . . at issue [in *Zadvydas* was] not limited, but potentially permanent."  *Id.* at 691.  The Supreme Court held that § 1231(a)(6), "read in light of the Constitution's demands, . . . does not permit indefinite detention."  *Id.* at 689.  Rather, it "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States."  *Id.*  The Court recognized a six-month period of detention as presumptively reasonable.  *Id.* at 701.  But, "after this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."  *Id.* at 701.  And "district courts more often conclude that a detainee's periods of detention should be considered together in determining whether the detention has exceeded the presumptively reasonable time under *Zadvydas*."  *Aguilar v. Noem*, No. 25-cv-03463-NYW, 2025 WL 3514282, at *3 (D. Colo. Dec. 8, 2025) (collecting cases).

---

the claims.

The INA establishes a removal period of ninety days under which a noncitizen is to be removed following a removal order. 8 U.S.C. § 1231(a)(1)(A).  The removal period begins on the latest of either (1) the date the removal order becomes administratively final, (2) the date of a court's final order if it stays a removal order after judicial review, or (3) the date a noncitizen is released from detention or confinement.  8 U.S.C. § 1231(a)(1)(B).  But a noncitizen "ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)."  8 U.S.C. § 1231(a)(6).  And "[i]f the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General."  8 U.S.C. § 1231(a)(3).

Under those regulations, "[t]he Executive Associate Commissioner" or "[a] district director" possess the authority to "revoke release" of a noncitizen "previously approved for release" when, "in the opinion of the revoking official: (i) [t]he purposes of release have been served; (ii) the alien violates any condition of release; (iii) [i]t is appropriate to enforce a removal order or to commence removal proceedings against an alien; or (iv) [t]he conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate."  8 C.F.R. § 241.4(l)(2).  "Upon revocation, the [noncitizen] will be notified of the reasons for revocation of his or her release or parole."  *Id.* § 241.4(l)(1). Moreover, "[t]he [noncitizen] will be afforded an initial informal interview promptly after

his or her return to . . . custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id.*

Here, Respondents failed to follow the INA's requirements. To begin, the presumptively reasonable post-removal period under *Zadvydas* expired before Respondents re-detained Alvarez Gonzalez. Alvarez Gonzalez argues that the presumptively reasonable period under *Zadvydas* "expired over thirty years ago, six months after his removal order became final in 1996." (ECF No. 1 at ¶ 76.) But the removal period begins on the *latest* of either (1) the date the removal order becomes administratively final, (2) the date of a court's final order staying a noncitizen's removal, or (3) the date a noncitizen is released from detention or confinement. 8 U.S.C. § 1231(a)(1)(B). The latest of these options was when Alvarez Gonzalez was released in 2014 following the detention effectuating the 1996 removal order, so the presumptively reasonable period expired six months after the sixty days he was detained. And although Alvarez Gonzalez has not been detained for over six months, "there is, at a minimum, a reasonable argument that the six-month period runs continuously from the beginning of the removal period, even if the noncitizen is not detained throughout that period." *Zavvar v. Scott*, No. 25-2104-TDC, 2025 WL 2592543, at *4 (D. Md. Sep. 8, 2025); *see Tadros v. Noem*, No. 25cv4108 (EP), 2025 WL 1678501, at *3 (D. N.J. June 13, 2025) (finding that the removal period began upon the affirmance of the removal order even though the petitioner was immediately released, rather than when he was detained 16 years later, and rejecting the argument that the petitioner could not obtain habeas relief because he had not yet been in detention for six months); *see also Hoang Trinh v. Homan*, 333 F. Supp. 3d 984, 994

(C.D. Cal. 2018) ("The Supreme Court in *Zadvydas* outlined a 'guide' for approaching these detention challenges, . . . not a prohibition on claims challenging detention less than six months."). And so, the presumptively reasonable period has long expired.

Proceeding to the language of the INA, Alvarez Gonzalez was detained for sixty days in 2014, and as of the date of this order, for an additional sixty-six days in the DCDF, for a total of one hundred and twenty-six days, which exceeds the statutory removal period. Respondents detain Alvarez Gonzalez under 8 U.S.C. § 1231(a). (ECF No. 12 at 1). Again, this section allows the Government to detain a noncitizen "who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal," beyond the removal period. But there has been no indication that Alvarez Gonzalez would be a risk to the community or unlikely to comply with a removal order. In fact, ICE has previously affirmatively found that Alvarez Gonzalez was neither a flight risk nor a danger to the community. (ECF No. 1 at ¶¶ 30, 86.) Respondents cannot have it both ways: they cannot say, on the one hand, that Alvarez Gonzalez is *not* a flight risk and *not* a danger to the community, while on the other hand, detain him under the statute authorizing extended detention for noncitizens found to be a flight risk or a danger to the community.

Turning to the INA's implementing regulations, the Court agrees with Alvarez Gonzalez's contention that Respondents violated their own regulations for two reasons. First, there is no indication that an Executive Associate Commissioner or a district director revoked his OSUP. (*Id.* at ¶ 51.) As Alvarez Gonzalez observes, under § 241.4(l)(2), only the ICE Executive Associate Commissioner or a field office director may revoke an OSUP. (*See id.* at ¶ 45.) Second, Respondents have yet to provide a

reason for the revocation to Alvarez Gonzalez despite § 241.4(l)(1)'s requirement that "[u]pon revocation, the alien will be notified of the reasons for revocation of his or her release or parole" and "be afforded an initial informal interview promptly after his or her return to Service custody" so that he or she can "respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l)(1). And though "Respondents maintain that Petitioner's detention is lawful and do not concede that it is unlawful," they "are not submitting a brief in opposition to the Petition detailing the facts and circumstances of this case." (ECF No. 12 at 1–2.) Respondents declined to give Alvarez Gonzalez any reason for the OSUP revocation, a refusal which has steadfastly been maintained to the present. Moreover, ICE "has not provided him with any interview" since being detained despite § 241.4(l)(1)'s requirement that it do so. (ECF No. 1 at ¶ 91.)

In sum, Respondents' re-detention of Alvarez Gonzalez and revocation of the OSUP violate the INA and its implementing regulations.

## B.    Fifth Amendment Violation

Alvarez Gonzalez also claims that Respondents have violated his substantive due process rights because his detention "does not bear a reasonable relationship to the two lawful purposes of immigration detention" and his procedural due process rights because Respondents revoked his OSUP without providing notice and a meaningful opportunity to be heard. (*See id.* at ¶¶ 85–92.)

Though the Tenth Circuit ultimately did "not determine . . . whether the Government's position is unconstitutional" in *Santillan Quiroz,* the Court finds its discussion of the doctrine of constitutional avoidance persuasive to the disposition of Alvarez Gonzalez's Fifth Amendment claims in this case. *Santillan Quiroz v.*

*Mullin*, --- F.4th ----, 2026 WL 1876709, at *17 (10th Cir. 2026).

The Tenth Circuit considered the following:

> The Due Process Clause of the Constitution forbids the
> Government from "depriv[ing]" any "person ... of life, liberty,
> or property, without due process of law."  U.S. Const.
> amend. V.  "Freedom from imprisonment – from government
> custody, detention, or other forms of physical restraint – lies
> at the heart of the liberty that [this] Clause protects."
> *Zadvydas* [*v. Davis*], 533 U.S. [678,] 690 [(2001)].  Due
> process requires that, whenever the Government detains
> somebody, it must have a good reason for doing so.  *Id*.  If
> the detention is civil and nonpunitive, like the immigration
> detention here, that reason must rise to the level of a "strong
> special justification."  *Id.*  Adopting the Government's
> interpretation of § 1225(b)(2)(A) would pose grave
> constitutional problems because there is little justification, let
> alone a strong one, for detaining every one of the millions of
> unadmitted noncitizens in our country.

*Id.* at *16.[4]

Here, Alvarez Gonzalez contends—and the Court agrees—that Respondents

have circumvented their constitutional obligation to justify his detention with a legitimate

governmental purpose.  (ECF No. 1 at ¶ 89; *see id.* at ¶ 80.)  Indeed, Respondents

have provided *no* justification for Alvarez Gonzalez's continued detention.[5]  By the same

token, as discussed above, Respondents have failed to adhere to the prescribed

regulatory and statutory procedures for demonstrating Alvarez Gonzalez's detention is

---

[4] "To the extent it matters," the Tenth Circuit "assume[d] for the sake of argument that questions about the types of justifications capable of supporting detention sound in substantive due process, while questions about procedures used for proving the satisfaction of a given justification sound in procedural due process.  In that regard, our discussion of constitutional avoidance sounds in substantive due process."  *Id.* at *16 n.12.  The Court makes the same assumption for the purposes of resolving the Petition.

[5] And, to the extent Respondents believe the 1996 removal order justifies Alvarez Gonzalez's detention under § 1231, they have waived that issue.  *See McKissick v. Yuen,* 618 F.3d 1177, 1189 (10th Cir. 2010) (holding an intentional failure to develop arguments adequately in the district court results in waiver).

justified.  *See also Garcia Abanil v. Baltazar,* 817 F. Supp. 3d 1148, 1158 (D. Colo. 2026) (concluding failure to provide individualized bond hearing prescribed by § 1226 necessarily violated petitioner's due process rights).  Moreover, "courts across the country routinely hold that (1) ICE violating its own regulations in detaining an individual is a due process violation, and (2) this violation makes the detention unlawful and the proper remedy is release."  *Izquierdo Navarro v. Bondi*, No. 25-cv-04210-NYW, 2026 WL 468582, at *3 (D. Colo. Feb. 18, 2026) (collecting cases); *see also Virachak v. Baltazar*, No. 26-cv-00391-STV, 2026 WL 746285, at *5 (D. Colo. Mar. 17, 2026) (finding Respondents' failure to follow the regulations outlined in § 241.4(l) resulted in a due process violation and ordering immediate release).

In sum, "[t]he Government has offered neither a justification nor a formal process for the deprivation of Petitioner's protected liberty interest."  *Sosa v. De Anda-Ybarra,* 2026 WL 1453999, at *2 (D.N.M. May 22, 2026).  Together, these wrongs constitute violations of Alvarez Gonzalez's substantive and procedural due process rights.

## C.    Remedy

The Government submits that, "if the Court does grant the Petition, the appropriate relief would be an order directing Petitioner's release on conditions to be set by the Department of Homeland Security."  (ECF No. 12 at 2.)  Similarly, Alvarez Gonzalez asks for "a writ of habeas corpus directing Respondents to immediately release Mr. Alvarez Gonzalez from ICE custody on his own recognizance or under reasonable conditions of supervision."  (ECF No. 1 at 24.)

This Court's concerns with bond hearings in the immigration context illustrate why Alvarez Gonzalez should be immediately released on his own recognizance.  This

Court has already written of its "concern[] that the immigration courts are not affording immigrants fair bond hearings," as "the mounting evidence that bond determination hearings conducted in Immigration Court under § 1226(a) have preordained outcomes has become impossible to ignore." *Pal v. Lyons,* 2026 WL 937962, at *4 (D. Colo. Apr. 7, 2025); *see also Quiroz Zacarias v. Mullin,* 2026 WL 1092162, at *4–*5 (D. Colo. Apr. 22, 2026) (concluding "the IJ deprived [petitioner] of his due process rights" by issuing a bond decision that was "wholly bereft of any analysis whatsoever"). Indeed, courts across the country have, with increasing frequency, ceased "order[ing] even initial bond hearings in cases like this one involving unlawful detention under § 1225(b) because Respondents' conduct can no longer be attributed to mere negligence or ineptitude, . . . and doing so would effectively allow the Government to transform an unlawful detention into a lawful one through *post-hoc* justifications." *Zheng v. Rokosky,* --- F. Supp. 3d ---, 2026 WL 800203, at *11 (D.N.J. Mar. 23, 2026) (collecting cases).

Given this reality, the Court will order Alvarez Gonzalez's immediate release.[6]

### IV.    CONCLUSION

For all these reasons, the Court ORDERS as follows:

1.    The Court's Order to Show Cause (ECF No. 9) is MADE ABSOLUTE and Alvarez Gonzalez's Petition (ECF No. 1) is GRANTED;

---

[6] In *Santillan Quiroz,* the Tenth Circuit contemplated in a footnote that, on remand, the district court should "order the Government to, within seven days of such order, either provide [the petitioner] with a bond hearing or else release him." 2026 WL 1876709, at *17 n.13. In this Court's view, it is somewhat ambiguous whether this language means that the Tenth Circuit views release as contingent on the Government's failure to provide a bond hearing, or a bond hearing and release as equal, alternative remedies. In the absence of clear guidance, this Court will continue to order immediate release in the first instance under appropriate circumstances, unless and until the Tenth Circuit holds otherwise.

2.      The Court GRANTS this relief to Alvarez Gonzalez pursuant to Counts I, II, and III of the Petition.  It does not reach the merits of Counts IV and VII;

3.      The Motion (ECF No. 2) is DENIED AS MOOT;

4.      **By no later than this Saturday, July 18, 2026,** Respondents shall IMMEDIATELY RELEASE Alvarez Gonzalez on his own recognizance, along with all his personal belongings, and they shall facilitate Alvarez Gonzalez's transportation from the detention facility by providing all necessary identity and travel documents to return to his primary address;

5.      **No onerous conditions of release shall be unilaterally imposed by Respondents on Alvarez Gonzalez**, including without limitation mandating that he wear GPS monitoring, submit to mandatory reporting, or have his movements otherwise restricted;

6.      Respondents are ENJOINED from re-arresting or re-detaining Alvarez Gonzalez unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that he is a flight risk or danger to the community such that his physical custody is legally justified pursuant to 8 U.S.C § 1226(a).  At any such bond hearing, Respondents shall bear the burden of proof, and Alvarez Gonzalez shall be allowed to have counsel present.  This injunction shall remain in effect until such time as this Court, or the Tenth Circuit Court of Appeals, vacates this Order;

7.      During such periods of time as Alvarez Gonzalez remains in Respondents' custody, Respondents shall continue to be ENJOINED from removing, transferring, or causing the removal or transfer of, Alvarez Gonzalez from the District of Colorado until

12

such time as this Court, or the Tenth Circuit Court of Appeals, vacates this Order;

8.      Should Alvarez Gonzalez believe he has a good faith basis to seek attorney's fees pursuant to the Equal Access to Justice Act, he is GRANTED leave to file a motion seeking the same, along with all supporting documentation, by no later than **August 13, 2026**.  Respondents shall file a response by no later than **September 3, 2026**, and Alvarez Gonzalez shall file a reply by no later than **September 17, 2026**; and

9.      Judgment shall enter in Alvarez Gonzalez's favor and against Respondents on **July 30, 2026,** UNLESS prior thereto the Court is informed that Respondents have failed to fully and timely comply with the terms of this Order.

Dated this 16th day of July, 2026.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge

13